UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RICHARD BURREL,

                    Petitioner,                              Hon. Janet T. Neff

v.                                                          Case No. 1:10-CV-901

JOHN PRELESNIK,

                    Respondent.

_____/


## REPORT AND RECOMMENDATION

        This matter is before the Court on Burrel's petition for writ of habeas corpus. In

accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed

findings of fact and recommendations for disposition of prisoner petitions, the undersigned

recommends that Burrel's petition be **granted in part and denied in part** as detailed herein.


## BACKGROUND

        As a result of events which occurred on August 11, 2005, Petitioner was charged

with: (1) armed robbery; (2) conspiracy to commit armed robbery; (3) first degree home invasion;

(4) conspiracy to commit first degree home invasion; (5) safe breaking; and (6) conspiracy to commit

safe breaking.  (Dkt. #11).  Pursuant to a plea agreement, Petitioner agreed to plead guilty to armed

robbery and first degree home invasion.  (Plea Transcript, November 8, 2005, 3).  In return, the

prosecution agreed to dismiss the other charges and, furthermore, recommend that Petitioner's

sentences for the two offenses to which he was pleading guilty run concurrently. (Tr. 3). Petitioner

was sentenced to serve concurrent sentences of 15-40 years on the armed robbery conviction and 160

months to 20 years on the home invasion conviction. (Sentencing Transcript, February 2, 2006,[1] 15).

Asserting the following claim, Petitioner later moved in the Michigan Court of Appeals for leave to

appeal his sentence:

> I.  Defendant's sentence was invalid because it was
> based on inaccurate information i.e., the improper
> scoring of the legislatively imposed sentencing
> guidelines, and use of an incorrect burden of proof
> and, therefore, his due process rights were violated,
> which requires resentencing.

The Michigan Court of Appeals denied Petitioner's motion for leave to appeal for

lack of merit in the grounds presented. *People v. Burrel*, No. 275877, Order (Mich. Ct. App., April

18, 2007). Asserting the same claim, Petitioner moved in the Michigan Supreme Court for leave to

appeal. The court denied Petitioner's request, stating that "we are not persuaded that the questions

presented should be reviewed by this Court." *People v. Burrel,* No. 133882, Order (Mich.,

September 10, 2007).

Petitioner subsequently filed in the trial court a motion for relief from judgment

which was denied. *People v. Burrel*, No. 05-08601-FC, Opinion and Order (Kent Cnty. Cir. Ct., July

1, 2009). Defendant appealed this determination in the Michigan Court of Appeals, asserting the

following claims:

> I.  The trial court committed plain error and denied

---

[1] The caption of the sentencing transcript indicates that Petitioner was sentenced on January 26, 2006. (Dkt. #13). The transcript subsequently indicates, however, that this proceeding instead occurred on February 2, 2006. (Dkt. #13 at 3). The state court docket sheet indicates that Petitioner was sentenced on February 2, 2006. (Dkt. #11). Thus, the Court has identified February 2, 2006, as the date on which Petitioner was sentenced.

Defendant his right to counsel on direct appeal by failing to reappoint new appellate counsel after Defendant's first appellate counsel abandoned Defendant's first appeal by not filing an application for leave to appeal.

II. The trial court erred by scoring Defendant 5 points under PRV 2 for a prior felony conviction when that conviction was not fully adjudicated in the state of Colorado.

III. Defendant must be resentenced because the trial court sentenced Defendant on inaccurate information when it scored offense variables 1, 2, 3, and 10, and trial counsel was ineffective for failing to object to the mis-scoring of these variables.

IV. The trial court erred by ordering Defendant and his co-defendant to reimburse the crime victim services commission because they were not victims.

V. Defendant received ineffective assistance of counsel on appeal when counsel failed to raise certain issues outlined in Defendant's motion for relief from judgment.

Petitioner's request for leave to appeal was denied. *People v. Burrel*, No. 293901, Order (Mich. Ct. App., December 1, 2009). Asserting the same five issues, Petitioner unsuccessfully moved in the Michigan Supreme Court for leave to appeal this determination. *People v. Burrel*, No. 140539, Order (Mich., July 26, 2010). On September 14, 2010, Petitioner initiated the present action in which he asserts the following claims:

I. Petitioner was denied effective assistance of counsel on appeal when appellate counsel abandoned Petitioner's appeal, therefore, warranting a new direct appeal and appointment of counsel.

II. Petitioner was denied due process when the trial court relied on inaccurate information when it scored prior

3

record variable 2 and offense variables 1, 2, and 3 and trial counsel was ineffective for failing to object.

III.     Petitioner received ineffective assistance of counsel on appeal when counsel failed to raise the sentencing issues.

Petitioner requests two different types of relief in this matter.  With respect to habeas claims II and III, Petitioner requests that the Court "vacate [his] sentences and remand [this matter] back to the trial court for a new sentence."  With respect to habeas claim I, Petitioner requests that the Court reinstate his direct appeal and appoint counsel to represent him on such appeal.

## STANDARD OF REVIEW

Burrel's petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254.  The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

(d)     An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to

"prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result." *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of

the prisoner's case" or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Ayers*, 623 F.3d at 307. Furthermore, review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the "factual determination by [the] state courts are presumed correct absent clear and convincing evidence to the contrary." *Ayers*, 623 F.3d at 308. Accordingly, a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." While this standard is "demanding" it is "not insatiable." *Id.*

For a writ to issue pursuant to § 2254(d)(1), the Court must find a violation of clearly established federal law "as set forth by the Supreme Court at the time the state court rendered its decision." *Stewart v. Irwin*, 503 F.3d 488, 493 (6th Cir. 2007). This definition of "clearly established federal law" includes "only the holdings of the Supreme Court, rather than its dicta." *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). Nevertheless, "the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart*, 503 F.3d at 493.

As previously noted, § 2254(d) provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy the requirements of either § 2254(d)(1) or § 2254(d)(2). This provision, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the

merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). Instead, when a federal claim has been presented to a state court and the state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits." *Id.* at 784-85. Where such is the case, the Court must apply the deferential standard of review articulated above, rather than some other less deferential standard.

The presumption that the state court "adjudicated [a] claim on the merits" may be overcome only "when there is reason to think some other explanation for the state court's decision is more likely." *Id.* If this presumption is overcome, however, the Court reviews the matter de novo. *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *see also, Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

## ANALYSIS

### I. Procedural Default and Exhaustion

Respondent concedes that Petitioner has sufficiently exhausted the claims asserted in his habeas petition. (Dkt. #9 at 12). Any argument that Petitioner has not properly exhausted his habeas claims would be without merit as Petitioner clearly presented all three claims asserted in this action to the Michigan Court of Appeals and Michigan Supreme Court on appeal of the denial of his post-conviction motion for relief from judgment. Petitioner properly exhausts his claims by "fairly presenting his federal claims to the state courts." *Jells v. Mitchell*, 538 F.3d 478, 488 (6th Cir. 2008). The exhaustion requirement "is satisfied when the highest court in the state in which the petitioner

was convicted has been given a full and fair opportunity to rule on the petitioner's claims."[2]  *Id.* With respect to the issue of procedural default, Respondent asserts that Petitioner has procedurally defaulted his claims of ineffective assistance of appellate counsel, thereby preventing this Court from considering such.  (Dkt. #9 at 13).  The Court disagrees.

Under the procedural default doctrine, federal habeas review is barred where a state court declined to address a petitioner's claims because of a failure to satisfy state procedural requirements.  *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).  Where a petitioner's claims have been procedurally defaulted, the state court judgment rests on an independent and adequate state ground precluding review by a federal court.  *See Coleman*, 501 U.S. at 750-51; *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977); *Harris v. Reed*, 489 U.S. 255, 262 (1989).  If a claim has been procedurally defaulted, federal habeas review is available only if the petitioner can establish either (1) the existence of cause for his default and actual prejudice resulting therefrom, or (2) that the failure to consider the merits of the claim will result in a fundamental miscarriage of justice.  *See Williams v. Bagley*, 380 F.3d 932, 966 (6th Cir. 2004) (citing *Coleman*, 501 U.S. at 750).

The Sixth Circuit employs a multi-part test to determine if a petitioner has procedurally defaulted a particular issue: (1) there must exist a state procedural rule that is applicable to the claim and with which the petitioner failed to comply; (2) the last state court rendering a judgment in the matter must have actually enforced the state procedural rule; (3) application of the procedural rule in question must constitute an "independent and adequate" state ground on which the state can rely to foreclose review of a federal constitutional claim; and (4) the petitioner cannot

---

[2]  The Court further notes that while the record does not appear to contain the pleadings Petitioner filed in the trial court in support of his motion for relief from judgment, from the trial court's opinion denying relief it certainly appears that Petitioner asserted in the trial court all three claims herein asserted.

demonstrate cause and prejudice excusing the default. *See Tolliver v. Sheets*, 594 F.3d 900, 928 n.11 (6th Cir. 2010).

While the trial court addressed in some detail the various claims asserted in Petitioner's motion for relief from judgment, the Michigan Court of Appeals and the Michigan Supreme Court both declined review on the ground that Petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." Controlling authority in the Sixth Circuit used to hold that denial of leave to appeal on the basis that a petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)," constituted a sufficient determination that the court's conclusion was based on procedural default thereby precluding federal habeas review. *See, e.g., Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002).

As the Sixth Circuit has more recently concluded, however, such form orders are no longer sufficient to establish that a petitioner has procedurally defaulted the claim in question. *See Guilmette v. Howes*, 624 F.3d 286, 288-92 (6th Cir. 2010). Instead, the Court must look to the "last reasoned state court opinion" to determine whether a particular claim has been denied on the merits or for failure to comply with a state procedural requirement. *Id.* at 291. Here, the "last reasoned state court opinion," is the decision by the trial judge denying Petitioner's motion for relief from judgment. *People v. Burrel*, No. 05-08601-FC, Opinion (Kent Cnty. Cir. Ct., July 1, 2009).[3]

The trial judge denied on the merits Petitioner's request for relief and did not rely on a failure to comply with a state procedural requirement as a basis for denying review or rejecting any particular claim. *Id.* Accordingly, the undersigned concludes that Petitioner has not procedurally defaulted his claims of ineffective assistance of counsel and such will be addressed pursuant to the

---

[3] A copy of this decision is contained within docket entry #16.

standard articulated above.

## II.        Sentencing Claims - Habeas Claim II

Petitioner asserts that his right to due process of law was denied where the trial court improperly calculated his sentencing guidelines score. Specifically, Petitioner asserts that the trial court improperly scored the following components of his sentencing guidelines score: (a) Prior Record Variable 2 and (b) Offense Variables 1-3.

To the extent that Petitioner claims that the scoring of his sentencing guidelines score is inaccurate in violation of Michigan law, such claim is not cognizable. *See* 28 U.S.C. § 2254(a) (the federal courts can only consider habeas claims alleging "violation of the Constitution, laws, or treaties of the United States"); *Coleman v. Curtin*, 425 Fed. Appx. 483, 484-85 (6th Cir., June 6, 2011) (claims that a state court improperly calculated the relevant offense variables is not cognizable in a federal habeas proceeding).

Petitioner also clearly asserts that the scoring of his sentencing guidelines score violated his constitutional right to due process of law. It has long been recognized that when imposing sentence, "courts have broad discretion to consider various kinds of information." *United States v. Watts*, 519 U.S. 148, 151 (1997). As the *Watts* Court observed, "[h]ighly relevant - if not essential - to [the judge's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and circumstances." *Watts*, 519 U.S. at 151-52. Sentences imposed on the basis of "misinformation of constitutional magnitude," however, may present grounds for habeas corpus relief. *Roberts v. United States*, 445 U.S. 552, 556 (1980). To obtain habeas relief, however, Petitioner must demonstrate that "the information in question was

materially false and that the trial court relied on it." *Potter v. Yukins*, 6 Fed. Appx. 295, 296 (6th Cir., Oct. 9, 2007) (citations omitted). As discussed below, Petitioner cannot establish that the scoring of his sentencing guidelines score was incorrect or based on inaccurate information.

### A.    Prior Record Variable 2

As previously noted, the offenses which form the basis of the present habeas action were committed on August 11, 2005. Petitioner concedes that on November 19, 2004, he pleaded guilty in Colorado to the crime of assault. Prior record variable 2 considers the defendant's "prior low severity felony convictions." Mich. Comp. Laws § 777.52. Michigan law defines a "prior low severity felony conviction" as a "conviction [for certain listed felonies[4]] if the conviction was entered before the sentencing offense was committed." Mich. Comp. Laws § 777.52(2). Five points are assessed under this variable if the defendant has one prior low severity felony conviction. Mich. Comp. Laws § 777.52(1)(d). The trial judge assessed Petitioner five points under this particular scoring variable.

While acknowledging that he was convicted of assault prior to committing the crimes which form the basis of the present action, Petitioner nevertheless argues that he should not have been assessed any points under this scoring variable because he was not sentenced on the assault conviction until after committing the crimes which form the basis of the present action. The trial judge rejected this argument noting that under the laws of both Colorado and Michigan, a "conviction" is defined as the establishment or adjudication of guilt independent of sentence. *People*

---

[4]    The trial judge determined that Petitioner's prior assault conviction fit within the definition of "prior low severity felony" articulated by the relevant statute. Petitioner does not dispute this determination.

*v. Burrel*, Case No. 05-08601-FC, Opinion at 2 (Kent Cnty. Cir. Ct., July 1, 2009). Accordingly, the trial judge concluded that Petitioner was "properly assessed 5 points under PRV 2." *Id.*

The trial judge's assessment of Petitioner's prior assault conviction is consistent with relevant Michigan authority. Petitioner's reliance on *People v. Smith*, 378 N.W.2d 384 (Mich. 1985) and *People v. Dukes*, 471 N.W.2d 651 (Mich. Ct. App. 1991) is inapposite as those cases concern the application of the consecutive sentencing statute, Mich. Comp. Laws § 768.7b, not the calculation of a sentencing guidelines score. Accordingly, Petitioner cannot establish that this particular scoring variable was incorrectly scored or was scored on the basis of inaccurate information.

B.    Offense Variables 1-3

The provisions under Michigan law concerning Offense Variables 1-3 are all structured similarly. Each provision first describes the general conduct to be assessed and then identifies the number of points to be scored for certain specific acts. *See* Mich. Comp. Laws §§ 777.31-777.33. Each provision then articulates additional considerations applicable in "multiple offender cases." *Id.* Petitioner asserts that because he and his co-defendants in this matter were not all convicted of the same offenses, it was improper for the trial judge to assess him *any* points under Offense Variables 1-3.

In support of his position, Petitioner relies on *People v. Johnston*, 732 N.W.2d 531 (Mich. 2007), in which the Michigan Supreme Court held that the "multiple offender" provisions articulated in offense variables 1-3 do not apply when calculating the sentencing guidelines score as to crimes of which only one of the multiple offenders was convicted. *Id.* at 531-32. Specifically,

the court held as follows:

> The sentencing court in this case scored defendant's offense variables 1, 2, and 3 identically to the scores given to his co-defendants because each of these variables directs that for "multiple offender cases," if one offender is assessed points under the variable, "all offenders shall be assessed the same number of points." However, defendant was the only offender convicted of larceny from the person and conspiracy to commit larceny from the person. Thus, his was not a "multiple offender case" for either of these crimes. Accordingly, the multiple offender provision does not apply to the scoring of defendant's guidelines in this case.

*Id.* at 531-32 (internal citations omitted).

Assuming the accuracy of Petitioner's assertion that he and his co-defendants were not all convicted of the same offenses, Petitioner would appear to be correct that the multiple offender provisions of offense variables 1-3 would not apply when calculating his sentencing guidelines score. Petitioner, however, does not argue that the trial court improperly assigned points under the multiple offender provisions of offense variables 1-3. Instead, Petitioner asserts that because he and his co-defendants were not all convicted of the same offenses it was improper for the trial judge to assess *any* points under offense variables 1-3. This argument is without merit.

First, Petitioner fails to comprehend that the multiple offender provisions in these three statutes assign points *in addition to* the points assessed under each offense variable's generally applicable provisions. The *Johnston* court did not hold that no points can be assessed under offense variables 1-3 in the circumstance described by Petitioner, only that in such circumstances no additional points can be assessed under the offense variables' multiple offender provisions. Second, Petitioner's interpretation would lead to an absurd result that enjoys no support in Michigan law and cannot have been intended by the Michigan legislature. Consider two defendants, the first acting

alone and the second acting in concert with other defendants. Both defendants commit the exact same acts and are convicted of the exact same offenses. However, the second defendant's confederates are convicted of completely separate crimes. Under Petitioner's interpretation, the assessment of points under the generally applicable provisions of offense variables 1-3 would be appropriate as to the defendant who acted alone, but not as to the defendant who acted in concert with others. This distinction is contrary to common sense, the plain language of the offense variables, and relevant case law.

The trial judge rejected Petitioner's argument on the ground that it was contrary to the language of the offense variables in question and inconsistent with the *Johnston* decision. *People v. Burrel*, Case No. 05-08601-FC, Opinion at 3 (Kent Cnty. Cir. Ct., July 1, 2009). Accordingly, the trial judge concluded that Petitioner was "properly assessed points under the OV's at issue." *Id.* The trial judge's determination of this issue is consistent with relevant Michigan authority. Accordingly, Petitioner cannot establish that this particular scoring variable was incorrectly scored or was scored on the basis of inaccurate information.

In sum, Petitioner cannot establish that the calculation of his sentencing guidelines score was incorrect or based on inaccurate information. Accordingly, the undersigned recommends that this claim be rejected.

### III. Ineffective Assistance of Counsel - Habeas Claims I and III

Petitioner next asserts that he is entitled to relief because his appointed appellate counsel abandoned him on appeal thereby depriving him of the right to the effective assistance of counsel. Petitioner additionally argues that his appellate counsel was ineffective for failing to assert

on appeal the claims, discussed above, regarding the calculation of his sentencing guidelines score. The Court need not address the specifics of this latter claim, as such is subsumed by the claim that counsel abandoned his representation of Petitioner by failing to take any action on Petitioner's behalf. As discussed below, the Court concludes that Petitioner was denied the right to the effective assistance of counsel and is, therefore, entitled to again seek, with the benefit of competent counsel, first-tier appellate review in the Michigan courts.

A.      Background

Before analyzing Petitioner's claim, it is first necessary to describe the actions, or rather inactions, of Petitioner's appellate counsel as such make clear the necessity of relief in this matter. Petitioner was sentenced on February 2, 2006. On March 9, 2006, attorney Neil Leithauser was appointed to represent Petitioner on appeal. (Dkt. #11). On March 28, 2006, Leithauser wrote to Petitioner informing him that he had been appointed to represent him on appeal. (Dkt. #2, Exhibit A). Counsel instructed Petitioner to send him "some detailed information about what it is you seek in an appeal." (Dkt. #2, Exhibit A).

On November 15, 2006, Leithauser wrote to Plaintiff informing him that he received the "packet of pleadings" that Petitioner forwarded to Leithauser the previous month. (Dkt. #2, Exhibit B). It appears that the materials Petitioner sent to Leithauser were in the form of proposed pleadings. Leithauser chided Petitioner on this point, instructing Petitioner that:

> you have captioned the pleading as a supplemental brief; there has been no brief filed and there is therefore nothing to supplement. The case is not in the Court of Appeals and will not be unless the court grants leave to appeal. The court has no jurisdiction at this point. The document that must be filed is a delayed application for leave to

appeal; it must be filed in the Court of Appeals before February 2, 2007, so there is time to make the necessary changes. **Rather than my messing with your brief, I am returning it to you so that you can see the specific things I am talking about and make the changes, if you wish**.

(Dkt. #2, Exhibit B) (emphasis added).

So, more than eight months into his representation of Petitioner, Leithauser, as he conceded, had still failed to take any action on Petitioner's behalf. Specifically, counsel conceded that he had failed to file with the Michigan Court of Appeals an application for leave to appeal. Moreover, as the bolded language above makes clear, Leithauser, apparently confused as to his role as Petitioner's attorney, instructed Petitioner to make the suggested changes to his proposed appellate pleading.

Petitioner, with complete justification, wrote to Leithauser on November 27, 2006, to express his dissatisfaction with Leithauser's inaction. (Dkt. #2, Exhibit C). Petitioner made clear to Leithauser that he desired to appeal his conviction and sentence, even going so far as to again suggest possible appellate issues. (Dkt. #2, Exhibit C). Petitioner encouraged Leithauser to "work for [his] money," but suggested that if Leithauser persisted in his inaction that he may have to hire an attorney willing to advance his interests. (Dkt. #2, Exhibit C).

Leithauser responded to Petitioner by letter dated December 11, 2006. (Dkt. #2, Exhibit D). Leithauser opened by condescendingly stating, "I thought I had explained the appellate process. . .in my letter to you of March 28, 2006." (Dkt. #2, Exhibit D). Leithauser reiterated to Petitioner that the Court of Appeals did not have jurisdiction in this matter because an application for leave to appeal had not yet been filed. (Dkt. #2, Exhibit D). Leithauser informed Petitioner that an application for leave to appeal "needs to be filed on or before February 2, 2007." (Dkt. #2,

Exhibit D).  Leithauser than stated, "[y]ou mentioned you would be hiring a lawyer;[5] please let me know as soon as that is done, either directly from you or make sure that the lawyer contacts me." (Dkt. #2, Exhibit D).

On February 9, 2007, two days after the apparent deadline for timely moving in the court of appeals for leave to appeal, Leithauser again wrote to Petitioner.  (Dkt. #2, Exhibit E).  After commenting that he had not been contacted by an attorney on Petitioner's behalf, Leithauser wrote:

> Please advise me if you filed an application in the Court of Appeals, and advise me what the status is.

(Dkt. #2, Exhibit E).

This statement reflects a profound misunderstanding on Leithauser's part as to his role as Petitioner's legal representative.  Simply put, Leithauser was apparently confused as to who was the client in this matter and who bore the responsibility for filing the appropriate pleadings in the Michigan Court of Appeals.

Petitioner subsequently wrote to Leithauser informing him that he had filed in the Michigan Court of Appeals a delayed application for leave to appeal.  (Dkt. #2, Exhibit F). Petitioner submitted this application on or about January 24, 2007, only days before such an application was required to be filed.  (Dkt. #14).  Petitioner's action in this regard was completely understandable.  Leithauser had sufficiently demonstrated by that time that he was unwilling to fulfill his professional responsibilities in this matter and take any action on Petitioner's behalf and, furthermore, expressly instructed Petitioner that it was Petitioner's responsibility to submit the necessary pleadings in the Michigan Court of Appeals.

---

[5]  This is an inaccurate statement by Leithauser.  Petitioner did not write that he "would be hiring a lawyer," only that if Leithauser was unwilling to fulfill his professional responsibilities, he *may* be compelled to hire an attorney.

For some unknown reason, Leithauser, on April 11, 2007, wrote to the Michigan Court of Appeals requesting that his "appearance as counsel for Mr. Burrel in the pending matter" be entered. (Dkt. #2, Exhibit F). One week later, Petitioner's application for leave to appeal was denied. (Dkt. #14). The following day, Leithauser wrote to Petitioner apologizing that "the case did not turn-out more favorably for you at this stage." (Dkt. #2, Exhibit H).

B.      Analysis

To establish ineffective assistance of counsel, Petitioner must show both deficient performance by his counsel and prejudice resulting therefrom. *See Premo v. Moore*, 131 S.Ct. 733, 739 (2011). To establish deficient performance, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Premo*, 131 S.Ct. at 739 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). A court considering a claim of ineffective assistance must apply a "strong presumption that counsel's representation was within the 'wide range' of reasonable professional assistance." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 689). Petitioner's burden is to show that "counsel made errors so serious that [she] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Premo*, 131 S.Ct. at 739 (quoting *Strickland*, 466 U.S. at 687).

Petitioner must further establish that he suffered prejudice as a result of his attorney's allegedly deficient performance. Respondent, citing to *Strickland*, asserts that to satisfy the prejudice prong, Petitioner must establish that his appellate counsel's errors were so serious that they deprived him of a fair appeal. *See Strickland*, 466 U.S. at 687. While this may constitute an accurate statement of how Petitioner can satisfy the second prong of the analysis, it is an incomplete statement

of how Petitioner can do so.

The Sixth Amendment guarantees to all criminal defendants the right to the effective assistance of counsel at "all critical stages of the criminal process." *See Marshall v. Rodgers*, 133 S.Ct. 1446, 1449 (2013) (quoting *Iowa v. Tovar*, 541 U.S. 77, 80-81 (2004) and citing *United States v. Cronic*, 466 U.S. 648, 653-54 (1984) and *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963)). Specifically, what Respondent's argument ignores is that where a criminal defendant is "denied counsel at a critical stage" of the proceeding, "no specific showing of prejudice is required, because the adversary process itself is presumptively unreliable." *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000) (citations omitted) (discussing the *Strickland* prejudice prong in the context of a claim of ineffective assistance by appellate counsel who failed to "file a notice of appeal without [her client's] consent"); *see also*, *Strickland*, 466 U.S. at 692 ("[a]ctual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice").

More than fifty years ago, the United States Supreme Court held that requiring an indigent criminal defendant to pursue an initial appeal of right without benefit of counsel violated the Constitution. *See Douglas v. California*, 372 U.S. 353, 354-58 (1963). While the *Douglas* Court did not employ the phrase "critical stage" in its decision, it cannot be disputed that an initial appeal of right is a "critical stage" of a criminal prosecution. *See Arsenault v. Commonwealth of Massachusetts*, 393 U.S. 5, 6 (1968) (per curiam) (citing to *Douglas* for the proposition that an appeal is one of the "critical stages of the criminal proceedings"); *Flores-Ortega*, 528 U.S. at 483 ("[t]he presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage. . .[t]he same is true on appeal"); *McAfee v. Thaler*, 630 F.3d 383, 391 (5th Cir. 2011) (recognizing that under *Douglas*, the first appeal as of right is a

critical stage of the criminal process); *Mintun v. Wasden*, 2009 WL 564186 at *5 (D. Idaho, Mar. 4, 2009) (recognizing that under *Douglas*, "the first appeal as of right is a critical stage because denial of counsel on appeal is reversible error"). That Petitioner's initial avenue of appellate review in the Michigan Court of Appeals was by leave of court, because he pleaded guilty, is likewise of no consequence. *See Halbert v. Michigan*, 545 U.S. 605 (2005) (the right to counsel on appeal articulated in *Douglas* extends to criminal defendants in Michigan who plead guilty and then seek "first-tier" review in the Michigan Court of Appeals).

Petitioner was "represented" by counsel on appeal in name only. As detailed above, attorney Neil Leithauser undertook no action on Petitioner's behalf and, moreover, went so far as to intimate to Petitioner that it was Petitioner's responsibility to move for leave to appeal and draft the brief in support thereof. The adversary process in this matter was presumptively unreliable because Petitioner was compelled - against his wishes - to represent himself at a critical stage of the criminal process. More than fifty years ago, the Supreme Court held that relief is required in such a circumstance. Respondent's arguments to the contrary are simply unpersuasive.

Respondent first argues that "[t]his record does not establish that counsel was deficient, only that Petitioner refused to heed counsel's advice and allow him to file a brief." This argument is both misguided and inaccurate. There is nothing in the record to suggest that Leithauser ever communicated to Petitioner that he (Leithauser) would fulfill his professional responsibility in this matter if Petitioner would only stop acting like an attorney. To the contrary, Leithauser solicited Petitioner's suggestions and input and after receiving such intimated to Petitioner that it was Petitioner's responsibility to move for leave to appeal and draft the brief in support thereof. There is no evidence that Petitioner ever did anything that impeded Leithauser from moving in the Court

of Appeals for leave to appeal. Moreover, even if such was the case, Respondent has identified no authority that permits an attorney to simply abandon a client who allegedly makes it more difficult for the attorney to perform his job. If Leithauser believed that Petitioner was acting in a manner that impeded his own efforts, he had a responsibility to discuss such with Petitioner and/or move in the appropriate forum to be released from his obligations to Petitioner. This argument is rejected.

Respondent next argues that Petitioner could not possibly have suffered prejudice in this matter because "Petitioner was still able to fully pursue his direct appeal in the Michigan Court of Appeals by filing an application for leave to appeal" which, the Court notes, was subsequently denied. The utter absurdity of this argument can best be highlighted by way of example. Assume that an indigent criminal defendant was compelled - against his wishes - to represent himself at trial because his attorney refused to participate in the case. Further assume that the defendant was subsequently convicted by the jury. No reasonable person would argue that because the defendant was permitted to represent himself, albeit unsuccessfully, he was not prejudiced by his attorney's absence.

In *Cronic*, the Supreme Court stated:

> The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted - even if defense counsel may have made demonstrable errors - the kind of testing envisioned by the Sixth Amendment has occurred. But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated. As Judge Wyzanski has written: While a criminal trial is not a game in which the participants are expected to enter the ring with a near match in skills, neither is it a sacrifice of unarmed prisoners to gladiators.

*Cronic*, 466 U.S. at 657 (citation omitted). Given that trial and first-tier appellate review are both

critical stages of the criminal process, the same logic applies. In the aforementioned hypothetical, the criminal defendant was thrown unarmed into the arena to face the gladiators. The circumstance Petitioner faced was no different. That Petitioner willingly jumped into the arena to do battle is of no consequence as he did so without benefit of the assistance of counsel to which he had an absolute right. As a result, Petitioner's appeal was not a confrontation between adversaries in which any reasonable person can have confidence, but was instead an unfair battle undertaken in clear and direct violation of the Sixth Amendment to the United States Constitution.

Finally, Respondent argues that Petitioner is not entitled to relief because he "does not argue that any issues were lost by his counsel's failure to file a timely application. There is no need to reinstate Petitioner's appeal to reconsider issues already considered and rejected on valid state grounds." The utter absurdity of this argument should be apparent. Respondent takes the position that because Petitioner, a layperson, was unable to identify and present any successful legal arguments in the appeal that he was compelled to pursue without the benefit of counsel he is not entitled to pursue another appeal with the benefit of counsel who may very well, by virtue of her training, knowledge, and experience, be able to better advocate the issues Petitioner pursued or, more importantly, identify issues of merit that Petitioner was unable to discern. This is akin to forcing a patient to operate on himself and, following the patient's death on the operating table, proclaiming that having a surgeon perform the operation would have been of no benefit because the patient would have died anyway. Not surprisingly, the Supreme Court has rejected Respondent's argument:

> in *Rodriquez,* counsel failed to file a notice of appeal, despite being instructed by the defendant to do so. We held that the defendant, by instructing counsel to perfect an appeal, objectively indicated his intent to appeal and was entitled to a new appeal without any further showing. Because "[t]hose whose right to an appeal has been

> frustrated should be treated exactly like any other appellan[t]," we
> rejected any requirement that the would-be appellant "specify the
> points he would raise were his right to appeal reinstated."

*Flores-Ortega*, 528 U.S. at 485 (quoting *Rodriquez v. United States*, 395 U.S. 327, 328-30 (1969)).

In sum, for the reasons articulated above, the Court concludes that Petitioner was denied the right to the effective assistance of counsel. Petitioner's appointed counsel, Neil Leithauser, undertook no action on Petitioner's behalf. Counsel's conduct cannot be considered a legitimate strategic decision. *See Flores-Ortega*, 528 U.S. 477 ("[c]ounsel's failure to [file a notice of appeal] cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes"). Because Petitioner was denied the assistance of counsel at a critical stage of the proceeding, the result of that proceeding is "presumptively unreliable" thereby entitling Petitioner to relief. As discussed herein, the denial of Petitioner's ineffective assistance of appellate counsel claim by the Michigan courts is contrary to clearly established Supreme Court authority. Accordingly, the undersigned recommends that Petitioner be permitted to again seek, with the benefit of competent counsel, first-tier appellate review in the Michigan courts.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that Petitioner was deprived of the right to the effective assistance of counsel on appeal. Accordingly, the undersigned recommends that Burrel's petition for writ of habeas corpus be **granted in part and denied in part** as detailed herein and he be permitted to pursue first-tier appellate review, with the benefit of competent counsel in the Michigan Court of Appeals. The undersigned further recommends that within 90 days Petitioner be appointed counsel for this purpose or released from custody.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: June 14, 2013

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge